WRIGHT'S ADM'RS *vs.* WILKERSON.

[FINAL SETTLEMENT OF SPECIAL ADMINISTRATOR'S ACCOUNTS.]

1. *Compensation of administrators.*—Section 1825 of the Code, which relates to the compensation of executors and administrators, applies to and includes special administrators ; and the word *receipts,* as used in said section, means pecuniary assets only, and does not embrace the other property which may come to the hands of the personal representative.

2. *Same.*—An executor or administrator cannot, on final settlement of his accounts, claim the allowance of a gross sum for his services, but must specify the items for which he claims compensation, as in chancery cases, and adduce proof of the value of his services in connection with each item.

3. *Allowance for attorney's fees.*—The probate court has no authority, on final settlement of an administrator's accounts, to render a decree in favor of his attorney and solicitor, for the value of his professional services rendered to the administrator.

APPEAL from the Probate Court of Russell.

IN the matter of the estate of James Wright, deceased, on final settlement of the accounts and vouchers of Jesse Wilkerson, as special administrator of said decedent. Letters of special administration on the estate of said decedent were granted to said Wilkerson, by said probate court, on the 12th January, 1867. The accounts and vouchers of said Wilkerson, for a final settlement, were filed on the 28th March, 1867; and the settlement was made on the 13th May, 1867, when the following decree was rendered by the probate court.

"This being the day heretofore appointed for examining the accounts and vouchers of Jesse Wilkerson, special administrator of James Wright, deceased, for the final settlement of his administration of said estate, and publication having been made as required at a former term, the court proceeded to examine, audit, and state the same; James M. Baker, the guardian *ad litem* appointed on behalf of the minors interested, and who are non-residents, appearing, and contesting the same; and it appearing, from said account, that said special administrator has received no money of said estate, and that, in accordance with the order of this court, he has turned over to the administrators in chief, appointed to succeed him, all the property of the estate returned by him in his inventory and appraisement, except such as has been accounted for properly, and to the satisfaction of the court; and it further appearing that said special administrator claims commissions, by way of compensation for his services, and also compensation to the attorney employed to counsel him in the management of said estate,—the court proceeded to examine and determine said matters; and being uncertain as to whether or not a special administrator is by law entitled to commissions, the account of said special administrator is disallowed; and the charge of the attorney appearing from the proof

to be reasonable and just,—it is ordered, adjudged, and decreed by the court, that Jesse Wilkerson, the special administrator as aforesaid, be, and he is hereby, allowed the sum of four thousand dollars, as compensation for his services as such administrator ; and that John A. Lewis, the attorney, be allowed the sum of two thousand dollars for his services ; and it is further ordered, that said special administrator be discharged from further liability in this behalf."

The administrators in chief reserved the following bill of exceptions on the hearing : "At a regular term of the probate court of Russell county, held on the 13th May, 1867, said special administrator filed his accounts for a final settlement of his special administration, and asked the court for its decision thereon, and also for an allowance for compensation for his services as such special administrator, and for counsel fees for his attorney, for professional services rendered during said administration; and, in support of his application, submitted the following evidence :

"Jesse Wilkerson, the special administrator, testified, that, on the 2d Monday in January last, he was appointed special administrator of the estate of James Wright, deceased, by the probate court of Russell county, and gave bond in the sum of two hundred thousand dollars.  On the 22d of January, he made an inventory of all the personal property of said estate in said county of Russell, consisting of his stock, provisions, plantation utensils, cotton, household furniture, accounts, &c., which were appraised at one hundred and six thousand dollars ; all of which property was on the Oswichee Bend plantation, some twenty-five miles from the court-house, and about the same distance from the residence of the special administrator. The amount involved being very large, and in view of the responsibility connected with the management of so large a trust, he employed John A. Lewis, esq., an attorney-at-law, resident at Crawford, to counsel him in said administration.  John A. Lewis, as his legal adviser, accompanied him to the plantation, and was present, counselling and advising him, at every step in making said inventory and appraisement.  There were two points especially, upon

which he felt solicitous, and upon which he required the advice of his legal counsel. There was a large amount of cotton, say some six hundred and thirty bales of cotton, valued at some $85,000, in store on the plantation, liable to be stolen or burned; and as administrator he felt great concern about his liability for the safe keeping of this cotton. There was, also, a handsomely and expensively furnished residence, for the proper care of which he felt anxious. Upon these points he was advised and governed by his counsel. There were, also, two summonses in garnishment served upon him, as special administrator, at the instance of two attaching creditors of heirs of the estate; one of said suits being for nine or ten thousand dollars, and the other for one thousand dollars. In these cases, he was advised by the same counsel, whom he consulted as to his liability, if he turned over the assets of the estate in his hands to the administrators in chief, without reserving a sufficiency of assets to meet any judgment that might be rendered against him. Acting upon the advice of his counsel, he retained in his hands one hundred and twenty-five bales of cotton, for this purpose. Subsequently, the garnishment in the case of the largest creditor was dismissed by the plaintiff in attachment, and the administrators in chief having executed a bond of indemnity, to secure him against all liability on the smaller demand, he turned over the whole of the cotton to the administrators in chief; all of which was done by him with the advice of his said legal counsel. As special administrator, he, on several occasions, perhaps as often as three times, visited the plantation, for the purpose of supervising the plantation, and advising with the agents in charge of the business, which was a very large one, employing some one hundred and sixty hands and some sixty mules, cultivating some two thousand acres in cotton, and four hundred in corn. On the 25th day of March last, John Gill Shorter and William H. Chambers were appointed administrators in chief; and he turned over to them all the property which had come into his hands, except the one hundred and twenty-five bales of cotton above alluded to, and the articles which had been consumed on the plantation since the

appraisement. The one hundred and twenty-five bales of cotton were afterwards turned over to the administrators in chief, as before stated. The cotton, in the appraisement, was valued at twenty-eight cents per lb.; and at the time it was turned over to the administrators in chief, it was worth twenty-two cents per lb. There had also been consumed on the plantation some three hundred dollars worth of the articles embraced in the inventory, such as corn, fodder, cotton-seed, &c.

"The special administrator also introduced William H. Chambers, esq., who testified, that he was an attorney-at-law; that he knew that John A. Lewis, esq., was the legal adviser of the special administrator, and, as such, had rendered the professional services testified to by the special administrator; that the said Lewis had consulted with the said Wilkerson in the garnishment cases referred to; and that without his counsel, Wilkerson would have been ignorant of his duty and liabilities, and the course adopted by said Wilkerson was in accordance with said Lewis' advice; that it was customary, and, in the opinion of the witness, proper, that lawyers, in charging for their professional services, should consider not merely the amount of labor performed, but also the amount of money involved in the cases in which they were employed. Witness also gave it as his opinion, that no one, unacquainted with the law, could safely assume the responsibility of administering large estates, and that the legal advisers of administrators should be well compensated. It was also in evidence, that the cotton on the plantation belonging to said estate was not misused by the special administrator; and also that, at the time of Wilkerson's appointment as special administrator, William H. Wright, one of the heirs-at-law of said estate, was living on the plantation in Oswichee Bend, and had charge of the same as general agent for the heirs; that he was left in charge of the same by the said Wilkerson, who did not, in any way, interfere with the business as he found it going on at the time of his appointment, and that the said William H. Wright is still residing on the plantation. John A. Lewis, esq., testified, that he is an attorney-at-law; that he rendered the services to the special administrator above

referred to, and that, in his opinion, his professional services were worth two thousand dollars; in which estimate he embraces an estimate of five per cent. on the amount involved in the garnishment cases referred to.

"The above was all the evidence adduced in the case; and upon this proof, the special administrator claimed an allowance of five per cent. upon the amount of his inventory, as allowed by law, amounting to five thousand three hundred dollars; which the court refused to allow, but decreed an allowance of four thousand dollars to the special administrator, as compensation for his services, and the additional sum of two thousand dollars for his counsel fees, for professional services rendered him by John A. Lewis, esq.; to each of which allowances said administrators in chief excepted."

The errors assigned are—"1st, that the probate court erred in decreeing the sum of four thousand dollars as an allowance for compensation to the special administrator"; and, "2d, that the probate court erred in decreeing to the special administrator an allowance of two thousand dollars for counsel fees."

JOHN GILL SHORTER, for the appellants.
JOHN A. LEWIS, *contra.*

BYRD, J.—We are of opinion, that special administrators are included within the term "administrators," as employed in section 1825 of the Code; and that the term "receipts," therein used, means pecuniary assets, and does not embrace assets which are not money or currency. The word "disbursements," in the same section, evidently means money or currency paid out in extinguishment of the liabilities of the decedent, or the expenses of administration. To the extent that a special administrator *may legally* receive the *money* assets of the estate, and disburse the same, he is entitled to commissions allowed by section 1825 of the Code; and the court should also allow actual expenses, and for special, or extraordinary services, such compensation as is just. Beyond this, the court is not authorized by law to go, in making an allowance to a special

administrator. Such special administrator is not entitled to commissions on the valuation of the assets of the estate.

[2.] The bill of exceptions sets out all the evidence introduced on the hearing; but neither the decree of the court, nor the record, discloses the items upon which the court made the allowance of four thousand dollars. In the case of *Pearson and Wife v. Darrington*, (32 Ala. 273,) this court, in speaking of allowances to administrators for services, said: "The uniform practice of the court is to refuse to make general allowances, without a specification of the items. The party must name and prove the particulars." This rule not having been complied with in this case, the allowance made by the court to the appellee can not be sustained on the evidence set out in the record.

[3.] The court rendered a decree in favor of John A. Lewis, esq., for two thousand dollars, for services rendered as attorney to the special administrator. We are not aware of any law, which confers on the probate court the authority to make an allowance or decree in favor of a person who is not a party to a proceeding in that court. The case of *Bates, adm'r, v. Vary, adm'r,* decided at the January term, 1867, (40 Ala. 421,) clearly indicates when an attorney's fee for services rendered an administrator should be allowed. Also, see head-notes 41, in the case of *Pearson and Wife v. Darrington, supra.*

Although all the evidence introduced on the hearing is set out, yet, there being no "specifications of the items" for which compensation is claimed, and no proof of the value of the services rendered, we can not render a decree in favor of the appellee on the evidence. On another hearing, this opinion, and the cases referred to herein, will furnish the parties and the court the rules and principles which may guide them in the ascertainment of a just compensation to the appellee, for his own expenses and services, and the services of his attorney.

Reversed and remanded.